■ In the Matter of the Claim of RACHEL CABREJA, Appellant. MOUNT SINAI MEDICAL CENTER, Respondent; THOMAS F. HARTNETT, as Commissioner of Labor, Respondent.—Mikoll, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed March 19, 1987, which ruled that claimant was disqualified from receiving unemployment benefits because her employment was terminated due to misconduct.

Claimant had been employed cleaning hospital rooms for Mount Sinai Medical Center for about two years before she was fired for complicity in the theft of hospital property. The incident which gave rise to her termination occurred on November 3, 1985, her last day at work. At about 11:45 A.M. on that day, hospital security observed a male (later identified as Juan Santiago, a former employee) enter the hospital through the emergency entrance carrying an empty shopping bag. He was followed to a television lounge on the fourth floor where he remained for 15 to 20 minutes. Santiago then went downstairs on an elevator.

The surveillance on Santiago was continued by Lieutenant Ramon Perez, a security officer, who followed Santiago and observed him meeting claimant at the top of a stairway where he handed her an empty brown shopping bag. Perez remained in the area and about 5 to 10 minutes later observed claimant coming out of a locker room carrying the shopping bag. Perez and claimant, who knew one another, exchanged greetings as claimant passed within five feet of Perez. Perez then observed claimant pass the shopping bag to Santiago. Perez made a radio call for assistance and attempted to follow Santiago. Santiago was later apprehended on the first floor with the bag which contained, *inter alia,* mops, soap and lotion. Carol

Reddington, operations manager for the building maintenance department of the hospital, identified the property as belonging to the hospital. The local police were called and Santiago was arrested. Subsequently, claimant was called to a meeting with Reddington and Perez. Claimant denied giving the bag to any man and was sent home. Her employment was terminated the next day.

Claimant's application for unemployment insurance benefits was denied by the local unemployment office, which ruled that she was disqualified from receiving benefits because she lost her employment through misconduct. A hearing was held and an Administrative Law Judge (hereinafter ALJ) overruled the initial determination of the local office. The ALJ found that the testimony of Perez was "incredible in light of the entire matter".

The Unemployment Insurance Appeal Board reversed the decision of the ALJ and sustained the initial determination disqualifying claimant. In its decision, the Board held that "[t]he credible evidence establishes that the claimant assisted a former employee in misappropriating hospital property. We find significant the credible eye-witness testimony of the security guard who personally observed the transfer of the shopping bag which contained the stolen hospital property." The Board also found as fact that claimant passed the bag to Santiago, "a former employee of the hospital known to the claimant". This appeal by claimant ensued.

We find unpersuasive claimant's argument that the holding of *Moore v Ross* (687 F2d 604, *cert denied* 459 US 1115) requires reversal because the Board overturned credibility determinations of the ALJ with respect to Perez without holding additional hearings and without specifying the particular evidence upon which it relied. The Second Circuit Court of Appeals stated in *Moore* that: "Credibility determinations are questions of fact within the Board's province * * * which the Board may resolve differently from the ALJ as long as its resolution is supported by substantial evidence" *(supra,* at 608). An affirmance is proper since the record as a whole contains justification for the Board's rejection of the credibility findings of the ALJ and other evidence to support the decision *(see, Moore v Ross, supra,* at 610; *Matter of Di Maria v Ross,* 52 NY2d 771, 772-773; *Matter of Padilla [Sephardic Home for the Aged—Roberts],* 113 AD2d 997).

It appears from the record that the ALJ's rejection of Perez's testimony was not based on Perez's demeanor, but was

grounded on the ALJ's conclusion that he could not accept the fact that an employee would proceed with a theft in the area of a known security guard. Thus, he labeled Perez's testimony relating such an event incredible. In the circumstances of this case the Board could properly disagree with that conclusion reached by the ALJ and reach a different conclusion. In response to a question from the ALJ as to why claimant would continue on with the theft after seeing him, Perez explained that he "did not think that she had knowledge that I was on to her". The ALJ also apparently could not believe that Perez did not see which way claimant left the scene immediately after she passed the shopping bag to Santiago, since Perez was only about five feet away. The ALJ overlooked or rejected Perez's responses that indicated that after Perez saw the exchange he made a radio call for assistance, that after doing so he "turned around to intercept the subject".

There is nothing in the record to indicate that Perez had anything to gain by making up a false story implicating claimant, while claimant, on the other hand, had an obvious reason to fabricate. The record reveals that claimant's testimony about her particular actions was vague and, at times, contradictory. At one point she testified that she saw Perez on the way to the locker room talking with her husband and her husband's supervisor and, when she came out of the locker room, Perez was still there speaking with her husband's supervisor. At another point, conversely, she testified that neither Perez nor anyone was there when she exited the locker room. The testimony of Reddington concerning claimant's access to the stolen items and claimant's prior work relationship with Santiago also supports the Board's determination. Reddington testified that she knew Santiago was a former employee from the name and description given her and from a picture of him. She recalled she had terminated him for sleeping on duty. Consequently, the Board's determination is supported by substantial evidence and should be affirmed.

Decision affirmed, without costs. Weiss, J. P., Mikoll, Yesawich, Jr., Levine and Harvey, JJ., concur.